Nott, Ch. J.,
delivered the opinion of the court:
The naval appropriation Act 3d March, 1897 (29 Stat. L., p. 648), under the heading “Pay, miscellaneous,” among other things, appropriated for “maintenance of students and attaches and information from abroad i;' * * three hundred thousand dollars.”
The court is of the opinion that the appropriation, so far as it relates to the maintenance of attaches and information from abroad, is in the nature of a contingent fund, and comes within the spirit if not the letter of the decision of the Supreme Court in the case of United States v. Jones (18 How., 92), wherein it is said: “The Secretary of the Navy represents the President and exercises his power on the subjects confided to his Department. He is responsible to the people and the law for any abuse of the powers intrusted to him. His acts and decisions on subjects submitted to his jurisdiction and controlled by the Constitution and laws, do not require the approval of any officer of any department, correcting the supposed mistakes or annulling orders of heads of departments.”
It being, then, within the discretion of the Secretary of the Navy to order an officer abroad and to assign him to duty as an attache, and there being no limit in the statute upon the amount of maintenance which may be allowed him, that amount is necessarily within the exclusive jurisdiction of the Secretary. It is not for the court and it is not for the accounting officers to say how much or how little shall be allowed to a naval attache. The only question which can arise *341 is how much did the Secretary intend to allow to the officer for maintenance.
Neither is the form of the allowance a matter for judicial review. In this case the American minister to Spain was in the United States at the time when the officer was assigned to this duty, and he was directed to report to him for duty on the 1st of July, 1897. As a matter of fact his services as a, naval attache then beg’an. Duty of a diplomatic nature could then be assigned to him, and in the troubled condition of international relations then existing between the United States and Spain it may well be inferred that his services were needed by the minister.
The intention of the Secretary as to the amount to be allowed for maintenance is as clear as his words are unambiguous. It was that the officer should receive $285 a month from the 1st of July, 1897, when he reported for duty, exclusive of and in addition to whatever traveling expenses and subsistence and other allowances he might be entitled to if maintenance had not been allowed. It was equally within the power of the Secretary to have reached the same result by directing that the allowance for maintenance should begin when the attache reached Madrid and increasing the amount for it. The form of the allowance was merely a matter of form, and does not involve the question of authority. If the Secretary had been limited to §285 a month, a question of law would then bo presented as to whether the allowance could begin before the officer reached the end of his journey. But as the statute stands the Secretary had the power to allow this officer whatever amount he saw tit for maintenance during the fiscal year for which the appropriation was provided; and it is immaterial whether he made it payable monthly from the beginning of the fiscal year to the end thereof, or whether ho made it payable from the 25th of September, 1897, when the officer arrived in Madrid, and increased the amount thereof. In whichever form the allowance was made it was the act of the Secretary and within the proper exercise of his discretion.
The judgment of the court is that the claimant recover judgment in the sum of $807.50.